The Honorable Benjamin H. Settle

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| AMERICAN DELTA PARTY; and ROQUE "ROCKY" DE LA FUENTE,<br><br>Plaintiffs,<br><br>v.<br><br>KIM WYMAN, in her official capacity as the Secretary of State of the State of Washington,<br><br>Defendant. | NO. 3:20-cv-05045-BHS<br><br>REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>**NOTE ON MOTION CALENDAR:**<br><br>**August 7, 2020** |

REPLY IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
NO. 3:20-cv-05045-BHS

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. STATEMENT OF THE CASE ....................................................................................... 1

    A. Effect of Fee Waiver in Washington's 2020 Election for Governor ................. 1

    B. Minor Party Presidential Candidate Certificates of Nomination in 2020 .......... 2

    C. Overview of State Statutory Schemes for Minor Party Presidential
        Candidate Ballot Access ..................................................................................... 2

III. ARGUMENT .................................................................................................................. 4

    A. Two Misunderstandings Underlie Plaintiffs' Arguments .................................. 4

        1. The "convention" component merely requires that signatures be
            gathered at an "organized assemblage" ..................................................... 4

        2. The signature gathering requirements are inextricably intertwined ........... 5

    B. Washington's Minor Party Presidential Nomination Process Complies
        with Constitutional Requirements ...................................................................... 7

        1. Washington has important interests in ballot access laws ......................... 7

        2. The requirement that signatures be gathered at organized
            assemblages reasonably advances Washington's interests ....................... 8

        3. On balance, the State's interests readily justify the limitation ................... 9

    C. Plaintiff's Equal Protection Arguments Lack Merit ........................................ 10

    D. The Secretary Has Satisfied Her Burden on Summary Judgment .................. 10

IV. CONCLUSION ............................................................................................................. 12

REPLY IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
NO. 3:20-cv-05045-BHS

i

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Celebrezze*,
　460 U.S. 780 (1983)..................................................................................................7

*Ariz. Libertarian Party v. Hobbs*,
　925 F.3d 1085 (9th Cir. 2019)..................................................................................5

*Ariz. Libertarian Party v. Reagan*,
　798 F.3d 723 (9th Cir. 2015)....................................................................................5

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*,
　135 S. Ct. 2652 (2015).............................................................................................6

*Burdick v. Takushi*,
　504 U.S. 428 (1992).......................................................................................7, 9, 11

*Citizens United v. Fed. Election Comm'n*,
　558 U.S. 310 (2010)................................................................................................10

*Common Sense Party v. Padilla*,
　No. 2-20-CV-0109-1-MCE-EFB, 2020 WL 3491041 (E.D. Cal. June 26, 2020)...........3

*Cousins v. Wigoda*,
　419 U.S. 477 (1975)..................................................................................................5

*Davis v. Fed. Election Comm'n*,
　554 U.S. 724 (2008)................................................................................................10

*De La Fuente v. Padilla*,
　930 F.3d 1101 (9th Cir. 2019)..................................................................................7

*Green Party of Ark. v. Martin*,
　649 F.3d 675 (8th Cir. 2011)..................................................................................11

*Green v. Mortham*,
　155 F.3d 1332 (11th Cir. 1998)................................................................................6

*Jenness v. Fortson*, 403 U.S. 431 (1971)........................................................................4

*Libertarian Party of Wash. v. Munro*,
　31 F.3d 759 (9th Cir. 1994) *overruled on other grounds by*
　*Pub. Integrity All., Inc. v. City of Tucson*,
　836 F.3d 1019 (9th Cir. 2016)................................................................................11

*Munro v. Socialist Workers Party*,
　479 U.S. 189 (1986)................................................................................................11

*Soltysik v. Padilla*,
910 F.3d 438 (9th Cir. 2018) ........................................ 11, 12

*Tedards v. Ducey*,
951 F.3d 1041 (9th Cir. 2020) ........................................ 12

*Timmons v. Twin Cities Area New Party*,
520 U.S. 351 (1997) ........................................ 9, 11

*Van Susteren v. Jones*,
331 F.3d 1024 (9th Cir. 2003) ........................................ 10

*Wash. State Grange v. Wash. State Republican Party*,
128 S. Ct. 1184 (2008) ........................................ 12

**Constitutional Provisions**

Wash. Const. art. II, § 1(a) ........................................ 6

Wash. Const. art. II, § 1(b) ........................................ 6

**Statutes**

Alaska Stat. § 15.30.025(a) ........................................ 3

Ariz. Rev. Stat. Ann. § 16-801(A) ........................................ 3

Cal. Elec. Code § 5151(c)-(d) ........................................ 3, 6

Haw. Rev. Stat. § 11-113(c)(2) ........................................ 3

Idaho Code § 34-501(1)(c)(C) ........................................ 3

Mont. Code Ann. § 13-10-504(1) ........................................ 3

Mont. Code Ann. § 13-10-504(3) ........................................ 3

Nev. Rev. Stat. § 293.1715(2)(c) ........................................ 3

Or. Rev. Stat. § 248.008(1)(a) ........................................ 3

Or. Rev. Stat. § 249.705 ........................................ 3

Or. Rev. Stat. § 249.735 ........................................ 2

Wash. Rev. Code § 29A.24.091(1) ........................................ 1

Wash. Rev. Code § 29A.24.091(4) ........................................ 1

Wash. Rev. Code § 29A.56.600 ........................................ 2, 4, 5

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

Wash. Rev. Code § 29A.56.610 ........................................................................................2, 5

Wash. Rev. Code § 29A.56.620 ...........................................................................................9

**Rules**

Fed. R. Civ. P. 56(d) ............................................................................................................12

REPLY IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
NO. 3:20-cv-05045-BHS

iv

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

## I.   INTRODUCTION

In order to appear on the ballot as a minor party or independent candidate for President, the party or candidate must provide a petition signed by 1,000 registered voters, which currently represents 0.022 percent of registered voters in Washington. Those signatures must be gathered at an "organized assemblage." Minor parties in Washington routinely satisfy these requirements and appear on the general election ballot and will do so again in 2020. This is an uncommonly minor burden: Almost all other states require *far* more signatures.

Washington's signature-gathering requirement has two components—the *number* of signatures and the *manner* in which those signatures are gathered—that cannot be separated in the manner that Plaintiffs suggest. While Washington law permits ballot access with an exceptionally small number of signatures, it insists on a signature collection method that provides an opportunity for voter education and reflects meaningful support.

Plaintiffs' evidentiary arguments lack merit. It is well established that, in this context, the question of whether a State has a legitimate interest is a question of law. Courts may consider any *conceivable* interest, even interests not raised by the parties. This is especially true where, as here, the burden imposed by Washington law is *de minimis*.

This Court should grant the Secretary's motion for summary judgment in its entirety.[1]

## II.   STATEMENT OF THE CASE

**A.   Effect of Fee Waiver in Washington's 2020 Election for Governor**

Washington law requires that candidates for certain offices pay a filing fee equal to one percent of the annual salary for the office. Wash. Rev. Code § 29A.24.091(1). If a candidate cannot afford the filing fee, the candidate may instead submit a "filing fee petition" containing a number of signatures equal for the number of dollars of the filing fee. Wash. Rev. Code § 29A.24.091(4). Due to the COVID-19 pandemic, Washington Governor Jay Inslee suspended

---

[1] Notably, Plaintiffs clarify they make only a facial challenge to the law, Dkt. 34 at 7, and do not in any way rely on the impact of COVID-19. And Plaintiffs do not oppose granting summary judgment on Counts VI and VII of their Amended Complaint. *See id.* at 24.

REPLY IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
NO. 3:20-cv-05045-BHS

1

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

the filing fee petition requirement for candidates who were unable to pay the filing fee. Second Decl. of Lori Augino, ¶ 3. Nine candidates took advantage of this waiver of the ballot access restriction and filed to run for Governor. *Id.*, ¶ 4. As of August 7, 2020, a preliminary count reflects that each was a frivolous candidate, garnering between 338 and 6,966 votes, representing between 0.02 and 0.41 percent of the total votes cast for Governor. *Id.*, ¶¶ 5-6.

**B.  Minor Party Presidential Candidate Certificates of Nomination in 2020**

So far, the Office of the Secretary of State has received seven certificates of nomination from minor political parties seeking ballot access for their presidential and vice presidential nominees. *Id.*, ¶ 7. This includes a certificate and signed petitions from the Alliance Party, which seeks to nominate Mr. De La Fuente. *Id.*, ¶ 8. The Alliance Party submitted Mr. De La Fuente's consent to nomination. *Id*. The Office of the Secretary of State is currently verifying the signatures on these petitions and anticipates completing the verification process no later than August 21, 2020.[2] *Id.*, ¶ 7. It has already verified that two minor parties will appear on the 2020 general election ballot. *Id.*

**C.  Overview of State Statutory Schemes for Minor Party Presidential Candidate Ballot Access**

Ballot access requirements for would-be minor party presidential candidates vary widely by state. In Washington, such candidates must gather 1,000 signatures (representing 0.022 percent of registered voters) at an organized assemblage. Wash. Rev. Code §§ 29A.56.600, .610. While the Secretary is not aware of any other State that requires that minor party presidential candidates gather signatures as organized assemblages,[3] the vast majority of states impose more onerous requirements regarding the number of signatures.

---

[2] The Secretary intends to file a short supplemental declaration when signature verification is complete to inform the Court as to how many minor party candidates for president qualified for general election ballot access in 2020.

[3] In some instances, Oregon requires that presidential candidates who are not members of a recognized minor party hold an assembly of at least 1,000 electors gathered in one place and collect those signatures. Or. Rev. Stat. § 249.735.

REPLY IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
NO. 3:20-cv-05045-BHS

2

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

The States within the Ninth Circuit are a fairly representative microcosm. Assuming that a minor party stands in the same position as the American Delta Party stands in Washington, those states would impose the following ballot access requirements for its presidential candidate:

- **Alaska**: A petition containing signatures of one percent of the number of voters who cast ballots for President[4] at the last presidential election. Alaska Stat. § 15.30.025(a).

- **Arizona**: A petition containing signatures of one and one-third percent of the total votes cast for governor at the previous general election, provided (a) signers come from five different counties and (b) at least ten percent of the required signatures are from counties with populations of less than 500,000 persons. Ariz. Rev. Stat. Ann. § 16-801(A).

- **California**: (a) a petition signed by ten percent of persons voting in the previous gubernatorial election or (b) voter-registration preferences for the party of 0.33 percent of registered voters.[5] Cal. Elec. Code § 5151(c)-(d); *cf. Common Sense Party v. Padilla*, No. 2-20-CV-0109-1-MCE-EFB, 2020 WL 3491041, at *1-2 (E.D. Cal. June 26, 2020) (describing operation of voter-registration qualification method).

- **Hawaii**: A petition with signatures of at least one percent of votes cast at the previous presidential election. Haw. Rev. Stat. § 11-113(c)(2).

- **Idaho**: A petition containing signatures of at least two percent of qualified electors who cast a vote for President at the previous general election. Idaho Code § 34-501(1)(c)(C).

- **Montana**: A petition containing 5,000 signatures.[6] Mont. Code Ann. § 13-10-504(1), (3).

- **Nevada**: A petition signed by one percent of votes cast for congressional representatives at the previous general election. Nev. Rev. Stat. § 293.1715(2)(c).

- **Oregon**: A petition signed by 1.5 percent of votes cast in the most recent general election at which a candidate for Governor was elected. Or. Rev. Stat. §§ 248.008(1)(a), 249.705.

---

[4] For reference, Washington's requirement represents approximately 0.031 percent of the votes cast for president—and also for Governor—in 2016.

[5] In Washington, voters do not record a party preference when registering to vote.

[6] For reference, this represents approximately 0.98 percent of votes cast for Governor in 2016.

REPLY IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
NO. 3:20-cv-05045-BHS

3

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

### III.    ARGUMENT

**A.    Two Misunderstandings Underlie Plaintiffs' Arguments**

Throughout their brief, Plaintiffs base their argument on two misunderstandings of Washington law. First, Plaintiffs rely on an erroneous interpretation of the term "convention," which leads them to mistaken conclusions about its burden. In reality, Washington law does not impinge on the ability of minor political parties to select their own candidates and electors; it simply requires that parties gather signatures at organized assemblages. Second, Plaintiffs wrongly attempt to isolate one component of Washington's signature gathering requirement in an attempt to divorce it from the underlying justification. This is incorrect. Washington law ensures "a significant modicum of support," *Jenness v. Fortson*, 403 U.S. 431, 442 (1971), by requiring a very small number of signatures, but with the trade-off that the smaller number of people must more meaningfully demonstrate support by attending an organized assemblage.

**1.    The "convention" component merely requires that signatures be gathered at an "organized assemblage"**

Plaintiffs overstate the burden of Washington's ballot access laws by ignoring the definition of "convention." Properly understood, the convention component of the signature gathering requirement means only that the required signatures must be gathered at an "organized assemblage." Wash. Rev. Code § 29A.56.600. This addresses whether a minor political party's candidates for President and Vice President may appear on the ballot in Washington.

Washington law does not dictate the manner in which a minor political party selects it nominees for President and Vice President or its electors. A minor political party is free to select its candidates for President and Vice President of the United States pursuant to the party's bylaws and then hold the required organized assemblage to gather signatures. Similarly, a minor political party is free to establish rules governing the selection of electors at its organized assemblage. A minor political party could, for example, require that electors be members of the party or provide that, by signing the nominating petition for the candidates, convention attendees agree to select

REPLY IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
NO. 3:20-cv-05045-BHS

4

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

a slate of electors already chosen by the minor political party.[7] While the term "convention," in a political context, may call to mind an elaborate affair replete with delegates, speakers, and party platform debates, Washington law demands far less—merely an "organized assemblage" at which the required 1,000 signatures are gathered. Wash. Rev. Code §§ 29A.56.600, .610.

Many of Plaintiffs' arguments ring hollow in light of the statutory definition of "convention." For one, Plaintiffs' reliance on *Cousins v. Wigoda*, 419 U.S. 477 (1975), is misplaced. *Cousins* stands for the proposition that a State generally may not interfere with a national political party's process for selecting presidential candidates. *Id.* at 489-91. Washington's convention requirement does not address this; rather, it addresses only whether a party's selected candidates will appear on the ballot in Washington. For the same reason, Plaintiffs' numerous other arguments related a State's ability to regulate the internal affairs of a political party are inapplicable here.

**2.     The signature gathering requirements are inextricably intertwined**

Plaintiffs repeatedly attempt to distinguish between the requirement of 1,000 signatures—which they concede is permissible—and the requirement that the signatures be gathered at an organized assemblage. But courts "examine the entire statutory scheme regulating ballot access," not isolated provisions. *Ariz. Libertarian Party v. Reagan*, 798 F.3d 723, 730 (9th Cir. 2015) (quoting *Nader v. Cronin*, 620 F.3d 1214, 1217 (9th Cir. 2010)).

Consideration of Washington's ballot access laws as a whole is particularly important here. Washington could have required *many* more signatures in order to qualify for ballot access. Under *Arizona Libertarian Party v. Hobbs*, 925 F.3d 1085, 1091 (9th Cir. 2019). Washington could have required signatures from up to five percent of registered voters—227,650 signatures—without triggering strict scrutiny. Instead, Washington has opted to require a mere 1,000 signatures—representing 0.022 percent of registered voters—on the condition that the

---

[7] It remains true, as the State pointed out in briefing in earlier litigation, that notice of a convention will frequently be a necessary condition for a member of the public to seek appointment as an elector for a minor political party. Dkt. No. 35-1, pp. 19-20. That does not mean that it is sufficient.

REPLY IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
NO. 3:20-cv-05045-BHS

5

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

signatures are obtained at an organized assemblage, with notice to the public. The requirement that signatures be obtained at an organized assemblage is an integral part of the signature gathering requirement. While Plaintiffs may believe that a requirement of 1,000 signatures is sufficient to establish a significant modicum of support, *see* Dkt. 34 at 13, Washington "is free to choose its ballot access requirements from [a] constitutional spectrum" of requirements. *Green v. Mortham*, 155 F.3d 1332, 1339 (11th Cir. 1998).[8]

Plaintiffs' disagreement with the premise inherent to Washington law is irrelevant. Plaintiffs disagree with the premise that a signature gathered from a person who attends an organized assemblage represents a greater degree of support than a signature gathered by a roaming signature-gatherer or that requiring an organized assemblage promotes voter education. *See* Dkt. 34 at 17-18. But the premise reflects a reasonable legislative judgment. A person who decides to attend an organized assemblage demonstrates greater support than a person signing a petition on a whim while running errands. California law similarly recognizes that a mere signature is less meaningful than other action, requiring either signatures of ten percent of voters or registration of 0.33 percent of voters who have declared preference for that party. Cal. Elec. Code § 5151(c)-(d). Washington law provides an opportunity for others to come to the organized assemblage and provide potential signers with more information.

While Washington's method of ensuring community support and voter education may be somewhat unique, this reflects a virtue of federalism—that States serve as laboratories of democracy. *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2673 (2015) ("This Court has long recognized the role of the States as laboratories for devising solutions to difficult legal problems." (internal quotation marks omitted)).

---

[8] In other contexts, Washington law demands far more signatures for ballot access. Placement of a referendum measure on the ballot requires signatures of four percent of the votes cast for governor at the last gubernatorial election. Wash. Const. art. II, § 1(b). Placement of an initiative measure on the ballot requires signatures requires *eight* percent of such votes. *Id.* art. II, § 1(a).

REPLY IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
NO. 3:20-cv-05045-BHS

6

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

### B. Washington's Minor Party Presidential Nomination Process Complies with Constitutional Requirements

Washington's ballot access provisions for third party presidential candidates do not impose a "severe" burden. Dkt. 34 at 6-8. Plaintiffs do not dispute this and cannot create a genuine dispute of material fact. As a result, there are three inquiries for this Court: (1) whether the State has identified "important regulatory interests," and (2) whether there is a reasonable fit between those interests and the means of accomplishing them; and (3) whether the State's interests justify the restrictions. *Burdick v. Takushi*, 504 U.S. 428, 434, 439-40 (1992).

#### 1. Washington has important interests in ballot access laws

States' well-settled and legitimate interests in limiting ballot access apply in the context of presidential elections. In several instances, Plaintiffs appear to suggest that States have no legitimate interest in regulating presidential elections. *See* Dkt. 34 at 8, 12, 14. But courts regularly find legitimate interests with respect to presidential elections and uphold reasonable ballot restrictions. *E.g., De La Fuente v. Padilla*, 930 F.3d 1101, 1106 (9th Cir. 2019).

Washington has a legitimate interest in voter education. Plaintiffs appear to question this interest, Dkt. 34 at 16, but the Supreme Court's decision in *Anderson v. Celebrezze*, 460 U.S. 780, 796 (1983), clearly establishes that, even with respect to presidential elections, "[t]here can be no question about the legitimacy of the State's interest in fostering informed and educated expressions of the popular will in a general election."

Washington also has a legitimate interest in ensuring that candidates have a "significant modicum of support." *De La Fuente*, 930 F.3d at 1105-06 (9th Cir. 2019) (quoting *Jenness*, 403 U.S. at 442). Plaintiffs appear to concede this. *See* Dkt. 34 at 8.

Plaintiffs do not contest Washington's other interests, including avoiding confusion, deception, and even frustration of the democratic process at the general election and streamlining the ballot, avoiding ballot overcrowding, and reducing voter confusion. Dkt. 29 at 14-15.

REPLY IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
NO. 3:20-cv-05045-BHS

7

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

### 2. The requirement that signatures be gathered at organized assemblages reasonably advances Washington's interests

The signature gathering requirement reasonably advances Washington's interest in an informed electorate. By requiring that candidates gather signatures at organized assemblages and provide notice to the public of time and location of those events, Washington law offers the public an opportunity to provide would-be petition signers with additional information about the candidate and party. For example, an anti-discrimination organization could stand near the assemblage and hand out leaflets revealing that a would-be candidate holds anti-Semitic views. Additionally, requiring an organized assemblage ensures that all members of the public can attend and learn more about the candidate and minor party.

The signature-gathering requirement also reasonably advances Washington's interest in ensuring that a candidate enjoys a significant modicum of public support. It does so in at least two ways. First, it requires that potential supporters take the affirmative step of attending an organized assemblage. This demonstrates meaningful support. Second, it advances that interest by creating an opportunity for additional voter education. By creating the opportunity for counter-speech, Washington law decreases the likelihood that a voter, due to incomplete information, will sign a petition for a candidate whose views they do not actually support.

For the undisputed reasons discussed in the Secretary's motion for summary judgment, the signature-gathering requirement advances Washington's interests in excluding frivolous candidates, avoiding ballot overcrowding, and streamlining the ballot. Dkt. 29 at 15; *see also* Second Augino Decl., ¶ 6.

Plaintiffs suggest that they may have skirted the "organized assemblage" requirement and simply gathered signatures from passersby at a ferry terminal. Dkt. 34 at 17-18. This case is not about whether Plaintiffs have complied with the law. However, even assuming that Plaintiffs merely gathered signatures at a ferry terminal and that this complied with the "organized assemblage" requirement, the requirement still advances all of Washington's interests (with the

REPLY IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
NO. 3:20-cv-05045-BHS

8

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

possible exception of ensuring that supporters have taken an affirmative step). The only meaningful difference Plaintiffs' allegation would make to the constitutional analysis would be to establish that the burden on parties and candidates is even more *de minimis*.

### 3. On balance, the State's interests readily justify the limitation

The final step in the *Anderson-Burdick* framework is to "weigh 'the character and magnitude of the asserted injury' . . . against 'the precise interests put forward by the State as justifications for the burden imposed by its rule . . . .'" *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789). "[A] State's 'important regulatory interests' will usually be enough to justify 'reasonable, nondiscriminatory restrictions.'" *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) (quoting *Burdick*, 504 U.S. at 434). Because strict scrutiny does not apply, the State need not demonstrate that its laws are "necessary to remedy an actual evil." Dkt. 34 at 13.

Washington's important interests more than justify the very minor burden imposed by the signature gathering requirement (which borders on *de minimis*). The burden consists of (1) the cost of providing notice of the organized assemblage(s), which has historically been just several hundred dollars, Dkt. 31 at 4, ¶¶ 20-21; (2) obtaining the support of 1,000 registered voters; (3) persuading the registered voters to participate in an organized assemblage; (4) a brief 10-day period between publishing notice and holding the organized assemblage, Wash. Rev. Code § 29A.56.620. Two facts clearly illustrate just how minimal the burden is. First, the total number of signatures is *far* fewer than most States require of minor party candidates. *See supra* at 3. Second, minor party candidates routinely satisfy these requirements, Dkt. 31 at 2, ¶¶ 4-6, and will do so again this year, *see* Second Augino Decl., ¶ 7.

Washington's important interests in an informed electorate, ensuring a significant modicum of support, excluding frivolous candidates, avoiding ballot overcrowding, and streamlining the ballot all readily outweigh the very minor burdens imposed on minor political parties. Washington's signature-gathering requirement is constitutional.

REPLY IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
NO. 3:20-cv-05045-BHS

9

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

### C. Plaintiff's Equal Protection Arguments Lack Merit

Plaintiff American Delta Party acknowledges that it is not similarly situated with major political parties with respect to its demonstrating a showing of community support. Dkt. 34 at 20-21. This is fatal to its Equal Protection Clause argument. *See Van Susteren v. Jones*, 331 F.3d 1024, 1027 (9th Cir. 2003). For the reasons discussed above, the requirement that 1,000 signatures be gathered at an organized assemblage is an integral part of demonstrating a significant modicum of community support in Washington. Washington law provides that a very small number of signatures is sufficient, where those signatures represent that the signers were willing to attend a party's organized assemblage and signed notwithstanding the opportunity to voter education by third parties. Having acknowledged that it is not similarly situated with major political parties with respect to demonstrating a significant modicum of support, the American Delta Party has acknowledged that its equal protection challenge fails.

### D. The Secretary Has Satisfied Her Burden on Summary Judgment

Plaintiffs clarify that they bring only a *facial* challenge to the State's ballot access laws; they advance no argument that the statute is uniquely unconstitutional as applied to them. *See* Dkt. 34 at 7. Facial challenges to the constitutionality of statutes frequently involve pure questions of law appropriate for resolution on summary judgment and without discovery. *See, e.g.*, *Davis v. Fed. Election Comm'n*, 554 U.S. 724 (2008) (reaching the constitutional issue and declaring law unconstitutional where lower court rejected FEC's contention on need for substantial discovery); *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010) (deciding a facial challenge without discovery on review of orders on plaintiff's motion for preliminary injunction and defendant's cross-motion for summary judgment).

Plaintiffs incorrectly contend that a state must come forward with evidence that its ballot access laws actually promote the asserted interests. *See* Dkt. 34 at 17-18. It is well-established that a State does *not* have "to make particularized showing of the existence of voter confusion, ballot overcrowding, or the presence of frivolous candidacies prior to the imposition of

REPLY IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
NO. 3:20-cv-05045-BHS

10

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    reasonable restrictions on ballot access." *Munro v. Socialist Workers Party*, 479 U.S. 189, 194-
2    95 (1986); *see also Timmons*, 520 U.S. at 364 (noting that that courts do not "require elaborate,
3    empirical verification of the weightiness of the State's asserted justifications"). To do so "would
4    invariably lead to endless court battles over the sufficiency of the 'evidence' marshaled by a
5    State to prove the predicate" and "would necessitate that a State's political system sustain some
6    level of damage before the legislature could take corrective action." *Munro*, 479 U.S. at 195; *see
7    also Green Party of Ark. v. Martin*, 649 F.3d 675, 686 (8th Cir. 2011) (deciding evidence that
8    Arkansas suffered from voter confusion, ballot overcrowding, or frivolous candidacies was not
9    required and that the state had significant regulatory interests in its ballot access scheme).

10   Whether an interest adequately supports a ballot access restriction is a question of law.
11   The Supreme Court's analysis in *Burdick* is illustrative. In *Burdick*, the Supreme Court reasoned
12   that "Hawaii's interest in 'avoid[ing] the possibility of unrestrained factionalism at the general
13   election,' provides adequate justification for its ban on write-in voting in November." 504 U.S.
14   at 439 (internal citation omitted). The *Burdick* court did not require or rely on any evidence that
15   the ban on write-in voting, in practice, would result in unrestrained factionalism. *See id.*

16   Subsequent Ninth Circuit precedent supports the conclusion that specific evidence that
17   ballot access laws in fact promote the asserted interests is not required. Courts "may look to any
18   *conceivable* interest promoted by the challenged procedures, whether or not the state cited that
19   interest in its briefs" and, in the Court of Appeals, whether or not cited "in the district court."
20   *Libertarian Party of Wash. v. Munro*, 31 F.3d 759, 763 (9th Cir. 1994) (emphasis added),
21   *overruled on other grounds by Pub. Integrity All., Inc. v. City of Tucson*, 836 F.3d 1019, 1025
22   (9th Cir. 2016).

23   Though Plaintiffs do not rely on it, *Soltysik v. Padilla*, 910 F.3d 438 (9th Cir. 2018), is
24   distinguishable. *Soltysik* holds that where a ballot access provision imposes a serious—but not
25   severe—burden, some factual development may be necessary. *Id.* at 448. The *Soltysik* court
26   clear, however, that evidence not necessary in every case, only "sometimes." *Id*. *Soltysik* is

REPLY IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
NO. 3:20-cv-05045-BHS

11

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

inapposite for two reasons. First, the burden imposed by Washington's signature gathering requirement is minimal; far more so than the party preference scheme challenged in *Soltysik*. The Ninth Circuit perceived it to be "self-evident" that California's party preference scheme would confuse voters, and the statute did not apply equally to all new and smaller parties. *Id.* at 446-47. As a result, the *Soltysik* court determined that the burden "is 'serious enough' to warrant more exacting review." *Id.* at 446 (quoting *Dudum v. Arntz*, 640 F.3d 1098, 1114 n.27 (9th Cir. 2011)). Here, by contrast, the burden of gathering 1,000 signatures at an organized assemblage is minimal and applies equally to all minor parties and independent candidates. More exacting scrutiny is not warranted. *See Tedards v. Ducey*, 951 F.3d 1041, 1067-68 (9th Cir. 2020) (distinguishing *Soltysik* on this basis). Second, unlike the plaintiff in *Soltysik*, who was responding to a motion to dismiss, Plaintiffs here *have* "had the opportunity to develop . . . evidence." *Soltysik*, 910 F.3d at 447-48. Despite that opportunity, they have not served any discovery requests[9] and do not ask the Court to defer its consideration of the instant motion under Fed. R. Civ. P. 56(d). Finally, Washington's ballot access statutes are not facially unconstitutional where many minor party presidential candidates have qualified in the past (and may well qualify this year); the statutes are not "unconstitutional in all of [their] applications," and the facial challenge must fail. *Wash. State Grange v. Wash. State Republican Party*, 128 S. Ct. 1184, 1190 (2008).

## IV.   CONCLUSION

Washington's ballot access requirements provide realistic and equal opportunities for minor party candidates to qualify for ballot access. The Court should grant the motion for summary judgment.

---

[9] The parties proposed a discovery cutoff date of August 14, 2020. Dkt. 24 at 9. The parties exchanged initial disclosures on May 18, 2020, per this Court's April 20, 2020, extension of the deadline.

REPLY IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
NO. 3:20-cv-05045-BHS

12

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

| | |
|---|---|
| 1 | RESPECTFULLY SUBMITTED this 7th day of August 2020. |
| 2 | ROBERT W. FERGUSON |
| 3 | *Attorney General* |
| 4 | s/ *Karl D. Smith*<br>KARL D. SMITH, WSBA No. 41988 |
| 5 | *Deputy Solicitor General*<br>CRISTINA SEPE, WSBA No. 53609 |
| 6 | *Assistant Attorney General*<br>1125 Washington Street SE |
| 7 | PO Box 40100<br>Olympia, WA 98504-0100 |
| 8 | 360-753-6200<br>Karl.Smith@atg.wa.gov |
| 9 | Cristina.Sepe@atg.wa.gov |

REPLY IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
NO. 3:20-cv-05045-BHS

13

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court of the Western District of Washington using the CM/ECF system which will send notification of such filing to:

Donald H. Mullins
Wesley G. Foreman
Badgley Mullins Turner PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
dmullins@badgleymullins.com
wforeman@badgleymullins.com

Paul A. Rossi
IMGP Advocates, Inc.
316 Hill Street, Suite 1020
Mountville, PA 17554
paul-rossi@comcast.net
paularossi@comcast.net

DATED this 7th day of August 2020, at Olympia, Washington.

s/ *Leena Vanderwood*
LEENA VANDERWOOD
*Legal Assistant*

CERTIFICATE OF SERVICE
NO. 3:20-CV-05045-BHS

1

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200