1

2

3

4

5

6

7

8

9

10

11

12

13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AMERICAN DELTA PARTY and
ROQUE DE LA FUENTE,

                    Plaintiffs,

          v.

KIM WYMAN, in her official capacity
as Secretary of the State of Washington,

                    Defendant.

CASE NO. C20-5045 BHS

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

14      This matter comes before the Court on Defendant Kim Wyman's, in her official

15  capacity as the Secretary of State ("State"), motion for summary judgment. Dkt. 29. The

16  Court has considered the pleadings filed in support of and in opposition to the motion and

17  the remainder of the file and hereby grants the motion for the reasons stated herein.

18                    I.   PROCEDURAL HISTORY

19      On March 26, 2020, Plaintiffs American Delta Party and Roque De La Fuente

20  ("Plaintiffs") filed an amended complaint alleging that various Washington statutes found

21  in RCW Chapter 29A.56 violate their rights to appear on the ballot as a third party and

22  presidential candidate, respectively. Dkt. 21. On January 22, 2020, Plaintiffs filed a

motion for a temporary restraining order and preliminary injunction. Dkt. 7. On January 23, 2020, the Court denied the motion. Dkt. 11. On July 2, 2020, Plaintiffs moved for a second temporary restraining order and/or preliminary injunction. Dkt. 25. On July 7, 2020, the Court denied the motion. Dkt. 28.

On July 8, 2020, the State filed a motion for summary judgment. Dkt. 29. On August 3, 2020, Plaintiffs responded.[1] Dkt. 34. On August 7, 2020, the State replied. Dkt. 36.

## II.   FACTUAL BACKGROUND

Plaintiffs allege that the State's procedures for minor party candidates to appear on the general election ballot violate the First and Fourteenth Amendment Rights to association and the Equal Protection Clause of the Fourteenth Amendment. Dkt 21, ¶¶ 1, 2. Washington requires minor party or independent candidates for President or Vice President of the United States to file a "certificate of nomination" with the Secretary of State. RCW 29A.56.670. The certificate of nomination must: (1) be in writing; (2) contain the names and sworn statements of the nominees; (3) identify the minor political party or independent candidate on whose behalf the convention was held; (4) be verified by the oath of the presiding officer and secretary; (5) be accompanied by a nominating petition with 1,000 signatures of registered Washington voters; (6) contain proof of publication of the notice calling the election; and (7) be submitted to the Secretary of

---

[1] In their response, Plaintiffs do not oppose the State's motion for summary judgment as to Counts VI and VII. Dkt. 34 at 24. The Court therefore **GRANTS** summary judgment as to these counts.

State no later than the first Friday of August. RCW 29A.56.640. Plaintiffs specifically challenge the constitutionality of the State's requirement for minor party or independent candidates to hold a convention to collect and file 1,000 signatures on nominating petitions. Dkt. 34 at 7.

A "convention" is defined as "an organized assemblage of registered voters representing an independent candidate or candidates or a new or minor political party, organization, or principle." RCW 29A.56.600. The State contends that the convention is a central requirement to Washington's process for minor party and independent candidates to appear on the general election ballot. To appear on the ballot, the minor party or independent candidate must collect the signatures and addresses of at least 1,000 registered Washington voters at a convention. RCW 29A.56.640(5). The convention must be held between the first Saturday in May and the fourth Saturday in July in a presidential election year. RCW 29A.56.610. In order to be valid, a convention must be attended by at least 100 registered Washington voters, but a minor party or independent candidate may hold multiple conventions. *Id.* The candidate or minor party may then add together the number of signatures from the multiple conventions to reach the 1,000 registered voter signatures requirement. *Id.* While a convention generally requires in-person assemblage, the State issued an emergency regulation allowing for virtual minor party or independent candidate conventions in light of the COVID-19 pandemic. WAC 434-208-1301; *see also* Dkt. 31, ¶ 10.

As of the March 10, 2020 presidential primary in Washington, there were 4,553,013 registered voters in Washington. Dkt. 31, ¶ 12. The State contends that the

1  requirement that minor parties and independent candidates obtain the signatures of 1,000

2  registered voters who attend a convention imposes a requirement that the party or

3  candidate obtain signatures of approximately 0.022 percent of registered Washington

4  voters. Dkt. 29 at 9.

5       On July 6, 2020, the Alliance Party sent the Washington Secretary of State a

6  Certificate of Nomination identifying Plaintiff Roque De La Fuente as its nominee for

7  President.[2] Dkt. 31, ¶ 22. The Alliance Party held a virtual convention on June 28, 2020.

8  *Id.*; Dkt. 31-1 at 68.

9                                 **III.  DISCUSSION**

10      The State moves for summary judgment on Plaintiffs' facial and as-applied

11  constitutional challenges to the minor party convention requirement, arguing that a

12  convention passes rational basis review. The State additionally moves for summary

13  judgment on Plaintiffs' equal protection challenge to the convention requirement,

14  asserting that minor parties are not similarly situated with major political parties and that

15  the convention requirement is not inherently more burdensome than the requirements

16  placed on major political parties.

17

18

19

20      [2] The State also provides additional declarations explaining the procedure the State has
   undergone to count and verify petition signatures for the certificates of nomination. *See* Dkt. 37;

21  Dkt. 38. However, the Court does not consider this evidence because submission of arguments or
   evidence for the first time upon reply is improper as it unfairly deprives the non-movant of an

22  opportunity to respond. *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996).

**A.       Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc*., 809 F.2d at 630.  The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The

1    nonmoving party may not merely state that it will discredit the moving party's evidence

2    at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W.*

3    *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory,

4    nonspecific statements in affidavits are not sufficient, and missing facts will not be

5    presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

6    **B.    Freedom of Association**

7           Plaintiffs argue that Washington's requirement that minor political parties hold a

8    convention in order to collect signatures and appear on the general election ballot violates

9    associational rights. Plaintiffs also argue that the other statutory requirements related to

10   the convention found in RCW Chapter 29A.56 violate associational rights. In their

11   amendment complaint, Plaintiffs challenge these provisions through both a facial

12   challenge and an as-applied challenge. Dkt. 21 at 15–17. However, in their response,

13   Plaintiffs only address the State's summary judgment argument to the facial challenges.

14   *See* Dkt. 34 at 7–20. The Court therefore considers the State's summary judgment motion

15   as to Plaintiffs' as-applied challenges unopposed and thereby grants the State's motion as

16   to Counts III and IV.

17          Courts evaluate challenges to ballot access laws under the First and Fourteenth

18   Amendments using the balancing framework in *Anderson v. Celebrezze*, 460 U.S. 780

19   (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992). This framework also applies to

20   would-be presidential candidates seeking access to a state's ballot. *Nader v. Cronin*, 620

21   F.3d 1214, 1216–17 (9th Cir. 2010). The balancing framework is a "'sliding scale'—the

22   more severe the burden imposed, the more exacting [the court's] scrutiny; the less severe,

1   the more relaxed [the court's] scrutiny." *Ariz. Libertarian Party v. Hobbs*, 925 F.3d 1085,

2   1090 (9th Cir. 2019) (citing *Ariz. Green Party v. Reagan*, 838 F.3d 983, 988 (9th Cir.

3   2016)). In considering a constitutional challenge to an election law, courts "must weigh

4   the 'character and magnitude of the asserted injury to the rights protected by the First and

5   Fourteenth Amendments' against 'the precise interests put forward by the State as

6   justifications for the burden imposed by its rule.'" *Nader v. Brewer*, 531 F.3d 1028, 1034

7   (9th Cir. 2008) (quoting *Anderson*, 460 U.S. at 789). Therefore, the severity of the burden

8   election law imposes on the plaintiff's rights dictates the level of scrutiny applied by the

9   court. *Id.* (citing *Burdick*, 504 U.S. at 434). A state must narrowly tailor its law to

10  advance "compelling" interests if the burden on constitutional rights is severe, *Norman v.*

11  *Reed*, 502 U.S. 279, 289 (1992), but if the burden is minimal, the law needs only to

12  reasonably advance "important" interests, *Timmons v. Twin Cities Area New Party*, 520

13  U.S. 351, 358 (1997).

14          The parties dispute the severity of the convention requirement's burden. The State

15  argues that the burden is minimal because "Washington law accords minor parties and

16  independent candidates considerable discretion with respect to conventions, thereby

17  giving parties' associational rights a wide berth." Dkt. 29 at 12. The State asserts that the

18  challenged law does not require that the convention be permitted to select the candidates

19  that a minor party is putting forward. *See* RCW §§ 29A.56.320, .640. Plaintiffs, on the

20  other hand, argue that the convention requirement imposes a heavy burden on minor

21  party's associational rights. Plaintiffs assert that the State is interfering with and

22  impairing political parties' private associational interests without the parties' consent.

1    Plaintiffs argue that the Washington law at issue here falls within the purview of

2  *Tashjian v. Republican Party of Conn.*, 479 U.S. 208 (1986). In *Tashjian*, the Republican

3  Party of Connecticut challenged a state law that required voters in any political party to

4  be registered members of that party. *Id.* at 210–11. The Republican Party of Connecticut

5  adopted a party rule allowing independent voters unaffiliated with the party to vote in

6  Republican primaries for federal and state offices. *Id.* at 212–13. The Republican Party

7  then challenged the Connecticut law, arguing that the statute violated the party's right to

8  freedom of association for the advancement of common political objectives. *Id.* at 213.

9  The Supreme Court held that the Connecticut law limited "associational opportunities at

10  the critical juncture at which the appeal to common principles may be translated into

11  concerted action, and hence to political power in the community" and thus violated the

12  First and Fourteenth Amendments. *Id.* at 216.

13    Plaintiffs argue that Washington's law requiring a convention to be held in order

14  to gather signatures to appear on the general election ballot is similarly violative.

15  Plaintiffs argue that under the rational of *Tashjian*, states do not have the authority to

16  expand or limit the associational rights of political parties. Plaintiffs assert that RCW

17  Chapter 29A.56 forces minor political parties and independent candidates to associate

18  with non-party members in a party's "nominating convention." By allowing non-party

19  members to be included in the "nominating convention," Plaintiffs argue that the State

20  has asserted itself into minor parties' internal affairs and selection of Presidential and

21  Vice-Presidential candidates in violation of the First and Fourteenth Amendments.

22

1    The State, on the other hand, argues that Plaintiffs misread the convention

2    requirement of RCW Chapter 29A.56. A convention is defined as "an organized

3    assemblage of registered voters," RCW 29A.56.600, and the State contends that the

4    convention requirement only means that registered voters must assemble for a minor

5    party or independent candidate to gather the required signatures. The Court agrees that,

6    under the plain language of the statute, the State does not dictate the manner in which a

7    minor party selects its nominees for President and Vice President or its electors. While

8    the term "convention" carries an ordinary meaning, RCW 29A.56.600 defines the term

9    convention as simply an organized assemblage of registered voters. Washington law does

10   not mandate that a convention under RCW Chapter 29A.56 determine party policy or

11   select candidates, but rather the law sets out a formal procedure by which signatures must

12   be gathered for the certificate of nomination. Minor political parties are still free to select

13   its candidates for President and Vice President pursuant to internal rules or bylaws under

14   RCW Chapter 29A.56. Such parties additionally may establish their own guidelines for

15   selecting electors at the required convention. By requiring minor parties and independent

16   candidates to hold a convention in order to gather signatures to appear on the general

17   election ballot, the State is not limiting the "associational opportunities" of the parties and

18   candidates like in *Tashjian*.

19   The Court therefore finds that the burden imposed by RCW Chapter 29A.56 is not

20   as stringent as Plaintiffs argue. But the Court must still evaluate the burden, and in

21   evaluating the burden, courts look to "whether reasonably diligent minor party candidates

22   can normally gain a place on the ballot, or if they only rarely will succeed." *Wash. State*

1   *Republican Party v. Wash. State Grange*, 676 F.3d 784, 794 (9th Cir. 2012) (internal

2   quotation marks and citation omitted). In 2008, one independent and five minor party

3   presidential candidates met all of Washington's statutory requirements and appeared on

4   the general election ballot. Dkt. 31, ¶ 4. In 2012, six minor party presidential candidates

5   appeared on the general election ballot, *id.* ¶ 5, and in 2016, five minor party presidential

6   candidates appeared, *id.*, ¶ 6. Independent and minor party candidates routinely satisfy

7   Washington's convention requirement, and Washington's overall scheme does not

8   significantly impair ballot access. *See Padilla*, 930 F.3d at 1105 (internal citation

9   omitted). The Court thus finds that the convention requirement found in RCW

10  29A.56.640(5) and as referenced in RCW Chapter 29A.56 does not impose a severe

11  burden on constitutional rights.

12      Because the burden imposed by the convention requirement is minimal, RCW

13  Chapter 29A.56 is valid so long as it reasonably advances important state interests. *See*

14  *Timmons*, 520 U.S. at 358. The Supreme Court has long recognized the "important state

15  interest in requiring some preliminary showing of a significant modicum of support" and

16  "in avoiding confusion, deception, and even frustration of the democratic process at the

17  general election." *Jenness v. Fortson*, 403 U.S. 431, 442 (1971). The State also has an

18  interest in fostering an informed and educated electorate. *Anderson*, 460 U.S. at 796.

19      The State here argues that the convention requirement directly serves

20  Washington's interest in ensuring that the nominated minor party or independent

21  candidates actually enjoy a modicum of support. Moreover, the State argues that the

22  convention requirement excludes frivolous candidates who do not have support, which

1    serves the State's interest in preventing ballot overcrowding and streamlining the ballot.

2    And the organized assemblages allow registered voters to be informed with additional

3    information about the minor party and candidates, which the State argues allows for an

4    informed electorate.

5         Plaintiffs argue, however, that the convention requirement is superfluous to serve

6    the State's legitimate interests. Plaintiffs concede the constitutionality of the requirement

7    to collect and file 1,000 signatures of registered voters to secure ballot access, *see* Dkt. 34

8    at 19, but argue that the signature requirement alone is sufficient state regulation to

9    advance the State's interests. Thus, according to Plaintiffs, the additional convention

10   requirement is unconstitutional. But the Ninth Circuit has held that when a challenged

11   law imposes limited burdens on ballot access, "'there is no requirement that the rule is the

12   only or the best way to further the proffered interests.'" *Ariz. Libertarian Party v.*

13   *Reagan*, 798 F.3d 723, 732 (9th Cir. 2015) (quoting *Dudum v. Arntz*, 640 F.3d 1098,

14   1114 (9th Cir. 2011)). The convention requirement must only further important

15   regulatory interests, even if the scheme is somewhat antiquated as suggested by the Ninth

16   Circuit. *See De La Fuente v. Wyman*, 773 Fed. App'x 868, 870 (9th Cir. 2019).

17   Additionally, the State is not required "to make a particularized showing of the existence

18   of voter confusion, ballot overcrowding, or the presence of frivolous candidacies prior to

19   the imposition of the reasonable restrictions on ballot access." *Munro v. Socialist*

20   *Workers Party*, 479 U.S. 189, 194–95 (1986).

21        The Court therefore agrees that Washington's convention requirement furthers a

22   legitimate regulatory interest. Facially, the convention allows registered voters who sign

1    the nominating petitions to make fully informed decisions as to whether to support the

2    minor party or independent candidate. This ensures that such candidates actually enjoy "a

3    significant modicum of support." *Jenness*, 403 U.S. at 442. And the convention

4    requirement eliminates unsupported, frivolous candidates from the ballot, which serves

5    the State's interest in "avoiding ballot overcrowding" and "streamlining the ballot."

6    *Padilla*, 930 F.3d at 1106. And to have an informed electorate, *see Anderson*, 460 U.S. at

7    796, registered Washington voters who sign the nominating petition need to know who

8    they are supporting. Washington's convention requirement reasonably advances these

9    state interests.

10          The Court finds that the challenged convention requirement found in RCW

11   Chapter 29A.56 imposes a minimal burden on minor parties' and independent candidates'

12   First and Fourteenth Amendment rights and that the law furthers important regulatory

13   interests. The Court thus grants the State's motion for summary judgment as to Counts I

14   and II.

15   **C.    Equal Protection**

16          Plaintiffs additionally challenge RCW 29A.56.610, arguing that the statute

17   violates the Equal Protection Clause of the Fourteenth Amendment because it exempts

18   major political parties from the requirement to hold a convention. Dkt. 21, ¶¶ 41, 86–89.

19   To sustain a challenge on equal protection grounds, a plaintiff must establish that the two

20   groups—minor parties and major parties—are similarly situated with respect to the routes

21   they must take to get on the general election ballot. *Van Susteren v. Jones*, 331 F.3d

22   1024, 1027 (9th Cir. 2003). And if the two groups are similarly situated, the statutory

1    scheme violates the Equal Protection Clause if the alternative means for obtaining access

2    to the presidential ballot are "inherently more burdensome." *Jenness*, 403 U.S. at 441; *see*

3    *also Nader*, 620 F.3d at 1218.

4    　　　The Supreme Court has squarely addressed an Equal Protection Clause challenge

5    to a state law requiring minor political parties to hold a convention prior to appearing on

6    the general election ballot. *American Party of Texas v. White*, 415 U.S. 767, 781–82

7    (1974). The Supreme Court rejected this argument, holding that an equal protection

8    challenge cannot be sustained "by mere assertions that small parties must proceed by

9    convention when major parties are permitted to choose their candidates by primary

10   election. The procedures are different, but the Equal Protection Clause does not

11   necessarily forbid the one in preference to the other." *Id.*

12   　　　The Ninth Circuit has also addressed similar arguments that a state law imposed a

13   higher burden on independent candidates than on a candidate chosen as the nominee of a

14   qualified party. *Nader*, 620 F.3d at 1218. Under a state's two-route ballot access law, a

15   nominee could obtain access to the ballot by submitting a petition 170 days before the

16   primary, supported by a petition with signatures of 0.1 percent of registered voters, and

17   then file an application sixty days before the general election. *Id.* at 1216. The other route

18   for independent candidates provided that such candidates had to file a petition with

19   signatures of one percent of the votes cast in the last presidential election. *Id.* at 1215.

20   The Ninth Circuit held that the route for independent candidates was not inherently more

21   burdensome and did not violate the Equal Protection Clause. *Id.* at 1218–19 (applying

22   *Jenness*, 403 U.S. at 440–41).

1          Plaintiffs concede that the State does not violate the Equal Protection Clause by

2   requiring minor party and independent candidates to collect 1,000 signatures to appear on

3   the general election ballot and not requiring major parties to do the same. Dkt. 34 at 21.

4   Plaintiffs argue that, once a showing of public support has been established through the

5   gathering of signatures, the convention requirement is subject to equal protection

6   analysis. But Plaintiffs concede that minor parties are not similarly situated to major

7   parties and provide no authority for their assertion that additional ballot access

8   requirements are subject to equal protection analysis once public support has been

9   established. Moreover, the Court has found that the challenged convention requirement

10  imposes a minimal burden on minor parties. The Court agrees with the State that, under

11  *Nader* and *Jenness*, obtaining 1,000 signatures at an organized assemblage is not

12  inherently more burdensome than the requirements for major party candidates[3] to appear

13  on the general election ballot.

14          Therefore, the State has established as a matter of law that the convention

15  requirement for minor party and independent candidates to appear on the general election

16  ballot does not violate the Equal Protection Clause, and the Court grants the State's

17  motion for summary judgment as to Count V.

18

19

20
─────────────────────
21          [3] Presidential candidates can appear on the general election ballot by being nominated by
    a major political party at its national convention. WAC 434-215-165. A major political party is
    defined as "a political party whose nominees for president and vice president received at least
22  five percent of the total vote cast at the last presidential election." RCW 29A.04.086.

ORDER - 14

# IV.  ORDER

Therefore, it is hereby **ORDERED** that the State's motion for summary judgment, Dkt. 29, is **GRANTED**.

The Clerk shall enter a **JUDGMENT** and close the case.

Dated this 18th day of September, 2020.

BENJAMIN H. SETTLE
United States District Judge